Good morning, Your Honor. May it please the Court. Maliha Hugg on behalf of Petitioner Achhar Singh. In this pre-real ID case, Petitioner submits that the record compels reversal of the agency's decision to deny his applications for asylum withholding and cat protection. Now, the threshold issue in this matter is Petitioner's credibility. Despite noting that Petitioner's testimony did not contain any obvious inconsistencies, the IJ nonetheless found that Petitioner was not credible. Now, the IJ's issues with Petitioner's credibility depended to a large extent on a corroborating document, namely a letter provided by the local party leader. Aside from the issues with that letter, the only inconsistencies noted by the IJ were the length of Petitioner's third detention and a generalized demeanor finding. Now, this Court has held that when each of the proper reasons for an adverse credibility finding fails, the Petitioner's testimony must be accepted as credible, and further corroboration is not required. Breyer. There was more to what the IJ said than what you just articulated. I'm sorry? There was more to what the IJ said about Petitioner's credibility than what you just articulated. He zeroed in on his demeanor, for example. Yes, Your Honor. There is his demeanor. And we've said that demeanor is entitled to a great deal of deference. Yes, Your Honor. That's correct. However, in this case, we submit that it was unreasonable for the IJ to dismiss the entirety of Petitioner's detailed testimony based in part on his demeanor finding. And although his demeanor finding did cover pretty much his whole adverse credibility determination, in this case, we submit that it was not specific. It was a general demeanor finding, in that he noted simply that Petitioner was nervous when he was testifying on cross and about testifying about things that were not in his application. However, Petitioner was very detailed about the things that happened in India. And in this case, I believe this Court should follow the case in Arun Palampalam. And there, the Court also held that although the IJ made a demeanor finding, it should not be deferred to, because it was not cited the IJ did not cite to a particular instance where the demeanor finding should override his other details, the detailed testimony that he gave. So I do think that in this case, the demeanor finding should not be deferred to by this Court. Now, the other situation the other issue that the IJ had was the length of the detention of Petitioner's third arrest, which, again, was unreasonable for the IJ not to Think about the 7-day issue? Yes, 7 versus the 11 days. And in this pre-real ID case, we believe that that is not a significant enough In fact, it's not even in consistency. Petitioner never testified that he was detained for 7 days. He consistently testified on direct and cross that he was detained for 11 days. And he offered a reasonable explanation for why his declaration was written in that manner. It was unreasonable for the IJ to dismiss Petitioner's otherwise detailed testimony about what happened simply based on that issue. Counsel, Judge Gould, if I could ask you a question. Yes, Your Honor. What bothers me on the inconsistencies or the basis for the finding is that the local political leader didn't mention any of the several arrests that the Singh claims he had. And that's such a striking fact and so central to the idea of persecution. It seems very strange to think that that shouldn't be considered. So perhaps you could address that. Yes, Your Honor. Well, Petitioner would submit that the letter was submitted to the court to show the party. It was the purpose for the submission of the letter was not to corroborate as such his arrest that he may or may not have had. The point of the letter, I believe, was to show that Petitioner was a worker for this party, and it did serve that purpose. And as I was as I think I had mentioned before, this the omissions in a corroborating document should not be used to override his otherwise detailed testimony in this pre-real ID case. And so we believe that yes, that was an omission in the letter. It would have helped if the letter had corroborated that particular part of Petitioner's testimony. But the letter's purpose was to corroborate that he was a worker for the party, and it did do that. The letter did say that he was a worker for the party. Now, there was a couple of other issues that the IG had with the letter, namely that it mentioned that Singh was a member and not a supporter, as Singh himself had called himself a supporter of the party and not an official member. However, the letter also referred to Singh as a worker of the party, which could refer to either a member or a supporter. So it was a little bit unclear in that respect. There was also an issue of the letter writer calling Petitioner his bodyguard, and Petitioner offered a reasonable explanation that anybody who was around this party leader could be referred to as his bodyguard. And there was no the only explanation that IG gave for dismissing that explanation was that Petitioner had never testified that he worked as a bodyguard. There was no meaningful way in which he addressed Petitioner's explanation of that. And now, the IG also had alternate grounds on which he denied this case, changed country conditions, as well as internal relocation. Now, if the agency, if this Petitioner is accepted as credible, we believe that the government cannot or did not meet its burden to show that he, the government did not meet its burden to show that he no longer has a presumption of future persecution in India. Now, because in this case, the agency did not provide an analysis of the country conditions, which was particular to Petitioner's situation. The IG did go over the country conditions evidence, which was submitted by the government, stating that the police is only interested in high-profile Sikh militants. However, the IG did not assess how this applies to a person who has been arrested multiple times in the past for his activism in Sikh politics and whom the police have demonstrated a continuing interest in, such that his wife and children have to hide. There are affidavits on page 388 and 390 of the record from local people in the village stating that his wife and children are continually being harassed by the police. So and that was something that the IG did not address at all. And so for somebody like that, one cannot use generalized country conditions reports and say, well, the conditions in India are better, therefore, he will be fine. It didn't address his particular situation. And similarly, for internal relocation. Now, internal relocation, that issue is interesting because in the 2009 decision of the board referring to the 2007 decision where the internal relocation, where these issues were grappled with by the board, the 2009 decision didn't state that we had previously denied this case based on internal relocation. It just said we had denied it based on adverse credibility and changed country conditions. So there's an there's an argument to be made here that internal relocation is really not any longer basis for denial of of this case. However, even if this court submits, even if this court accepts that internal relocation is is a proper basis on which the agency denied this case, we the petitioner would submit that that the agency's decision should be overruled because of cases like Singh v. Mosharak, where it says that it has never been thought there are safe places within a nation for the applicant to return where the persecutor is the government. And I believe that I will reserve the rest of my time. Thank you. Nicole Nardone, Attorney for the Respondent, United States. The Court should find that the record does not compel a finding that the petitioner is eligible for relief in this case, where the agency determined, first, that substantial evidence supports the immigration judge's finding that Singh lacked credibility, and also substantial evidence supports the immigration judge's finding that even if the petitioner established past persecution, the government rebutted this with evidence of changed country conditions and also that the petitioner could reasonably relocate within India without a fear of future harm. The record does not compel a finding that Singh testified credibly. Contrary to Petitioner's argument, the immigration judge clearly set forth specific and cogent reasons, which go – which at least one of which goes to the heart of Petitioner's claims as they relate to his alleged affiliations with the Akali Dalman party. Substantial evidence includes – there were a number of discrepancies that were noted. The first one are the discrepancies between the letter of the local president of the political organization and Petitioner's testimony. First, with regard to this letter, the record states that Singh was the president – the local president's bodyguard. Nowhere in Petitioner's testimony is there any indication that he performed anything other than menial tasks for this political party. And again, even in his own testimony, he recounts that he was responsible for getting food for the organization, for putting up signs, distributing leaflets, things like that. There's no indication that he in any way lived with this person or was in any way closely associated with him. And when Singh was challenged on this issue, if you look closely at the testimony, he says first, well, any person could be a bodyguard. It's a person who's close to another person. And then I'm not sure if it was the judge or maybe the opposing counsel asked him, so could a friend be a bodyguard? And then Petitioner responded, no, it would only be a person from the outside, someone who's close to them, but someone who stays with this person, indicating someone that lives with them. And there's certainly no evidence in the record, Singh's never testified, nor did he state in his testimony that he ever lived with this person or that he was in any way that physically close with him. The immigration judge also noted the distinction between Singh as a member versus Singh as a supporter. Again, the President, local President, indicated that Singh was a member. He had been a member since 1995. He had known him for all these years. But Singh, in his testimony, was very specific. He said, I was not a member, I was a supporter. And then he went on to distinguish between a member and a supporter and why those things are distinct. Again, when he was offered an opportunity to explain, well, then why are you – why do you – why is this person referring to you as a member, again, the immigration judge, who, again, the Court has recognized is in the best place to observe these inconsistencies and comment on the significance of them, found that the Petitioner was just wavering on this issue and seemed nervous and seemed as if he could not offer a plausible and reasonable explanation. The last described – I'm sorry. That seems like a very minor inconsistency. It does seem minor, Your Honor, but – What difference does it make whether you're a supporter or a supporter versus a member? He claims it as a result of his involvement, that that was what resulted in his being a member. I think that's a minor – it may have been a minor thing, but when you do look at this in the context, and again, with a number of other events that were noted by the immigration judge, I think in the totality of the circumstances, I think it's reasonable that the immigration judge here found these inconsistencies relevant. And I think, again, if we're looking at this from, you know, the perspective that we've always found that the immigration judge is in the best position to observe and on a daily basis does observe and make creditability determinations, here, these notes are important. So he also pointed out the fact that, as was noted earlier, that the local president said nothing about the fact that Singh had experienced these very significant four incidents of police detention and brutality, especially when he indicated that he'd known him since 1985 and worked very closely with him. The immigration judge also noted this discrepancy in his asylum declaration between the seven days versus 11 days. And again, although that seems like a minor inconsistency, the immigration judge noted that when he asked him to explain this distinction. If there's nothing in here about the four incidents, why is it inconsistent? Why is there an inconsistency? I mean, his declaration is what it is. Well, what it is is it was enough to give the immigration judge pause. And I think that that's one of the notes that he made. But again, I would like to also point out that there was a significant and very detailed adverse demeanor finding here also. The immigration judge very specifically identifies nonverbal aspects of the testimony. And, you know, this Court does defer to those things. And he speaks about how he noticed this distinct change in Singh's demeanor when all of a sudden the testimony shifted away from his very specific details of his asylum declaration. And that he noted in particular that he had been shaking his leg back and forth, his speech slowed, he was more hesitant, more evasive and agitated. And I think in light of all of these things in a context, you know, for the immigration judge, the Court should give deference to the fact that he's seeing something here that the person seems as if he's nervous. But the agency had alternative rulings. Could you address that? It had an alternative ruling, yes. I'll just quickly. Well, it had two, as I understood it. Both changed country conditions and internal relocation. That's right. Is that right? There were two. There was a change in country conditions, and then ultimately the immigration judge also found that it would be reasonable for the Petitioner to relocate outside the Punjab. And again, the immigration judge here did do, contrary to the Petitioner's argument, did do a very individualized analysis. Specifically noted the fact that the Petitioner's claim was based on his concern of his connection, his perceived connection to militants, and analyzed that particular risk in that context. The agency looked not only at the State Department's reports, but also looked at many other records in the evidence in the records, indicating that the government there was a Eustis response to information requests that discussed how militants and the list of wanted militants is now windowed down to a very high-profile individuals, and that the Punjab police, although they're serious about pursuing high-level, hardcore militants throughout the country, they wouldn't be targeting what they consider lower-level potential militants, persons that just had strong political views or were politically active. Again, there was also, the immigration judge also noted the Economist report, noting that many of the Sikhs have now returned to Punjab, and people that were affiliated with this organization, and a BBC article that also discussed how militant memorabilia is now for sale in the Punjab, and it doesn't seem as if they're being targeted. In light of all these changes, substantial evidence supports the agency's finding that Singh did not have a reasonable fear of persecution if he returned to India at the time, and that he would certainly not be pursued outside of the Punjab as a high-profile militant. If there's any other questions, I'll just thank you very much. No questions.  You had a minute. Thank you, Your Honors. Just quickly, I would just like to note that, as far as the issue about the letter, the letter itself had, the IG's adverse credibility determination focused on the letter, but however, that was a corroborating document, and in light of the fact that Petitioner's testimony was otherwise credible, and otherwise, Petitioner Sumit said his testimony was otherwise credible, the issues with that letter should not be used to override his otherwise detailed testimony. And as far as his demeanor, the IG did not consider the fact that Petitioner described himself as illiterate on page 185 of the record that's noted in his testimony. There are definitely cultural issues at play here, and that was not noted in the IG's, or considered by the IG in his decision. And that's really all I have to say. Thank you. Okay. Well, thank you. We appreciate your arguments, and safe travels and whatnot. The matter is submitted at this time. Thank you.
judges: Huff, Gould, Paez